FILED
2/1/2021
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ADCI CORP., f/k/a ASIA DISCOUNT CENTER, INC., a Washington corporation, | ) ) ) ) | No. 80658-1-I |
| | | DIVISION ONE |
| Appellant, | ) ) | PUBLISHED OPINION |
| v. | ) ) ) | |
| BAO NGUYEN and JANE DOE NGUYEN and their marital community; DEO BUI and JANE DOE BUI and their marital community; CYNTHIA HOANG and JOHN DOE HOANG and their marital community; JENNY LI and JOHN DOE LI and their marital community; CAFÉ PHO, INC., a Washington corporation, f/d/b/a Café Pho; CAFÉ PHO 1, LLC a Washington Limited Liability Company, d/b/a Café Pho; CAFÉ PHO II, Inc., a Washington corporation, d/b/a Café Pho; HOA HOANG and JANE DOE HOANG, and their marital community; ADAM NGUYEN and JANE DOE NGUYEN and their marital community, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) ) | |

HAZELRIGG, J. — ADCI Corporation appeals a trial court's order dismissing its complaint as time-barred under CR 12(b)(6). The parties dispute whether a four-year statute of limitations on an action for the sale of goods applies, or a six-year limitation on an action on an open account. Viewing the facts in the light most favorable to ADCI, we conclude that ADCI sufficiently pleaded "[a]n action upon

an account receivable." Where, as here, multiple statutes of limitations may govern, the court must apply the longer. As such the six-year statute of limitations in RCW 4.16.040(2) applies. We reverse the order of dismissal and remand for further proceedings.

FACTS

ADCI is a wholesale merchant that supplies produce and other food products to restaurants, including Café Pho, a Vietnamese restaurant with two locations in Seattle and Tukwila.

On June 26, 2019, ADCI sued Café Pho and its owners, Bao Nguyen, Deo Bui, Cynthia Hoang and Jenny Li (defendants), for "breach of written agreement and recovery of past due accounts receivable based on the invoices." The complaint alleged that the defendants regularly "ordered and received delivery" of produce and food from ADCI to use in their restaurants. In response, ADCI "extended credit to Defendants per their orders by supplying produce and food on account to the restaurant." The invoices that ADCI sent to Café Pho for the orders provided for a 1.5 percent monthly finance charge on unpaid amounts. At the time of the filing of the complaint, Café Pho owed ADCI $193,663.34 in unpaid invoices.

ADCI attached to its complaint two exhibits listing the date and amount of all of the unpaid invoices. Exhibit A listed 413 unpaid invoices to the Seattle restaurant, dated from July 1, 2013 to May 28, 2015. Exhibit B listed 81 allegedly unpaid invoices to the Tukwila restaurant, dated from February 2, 2015 to May 29, 2015.

On August 5, 2019, the defendants filed a CR 12(b)(6) motion to dismiss the complaint as barred by the statute of limitations. The defendants claimed that the transactions represented by the invoices were "contracts for sale" as defined by RCW 62A.1-106, and that ADCI's complaint stated only a claim for breach of 494 separate contracts. The defendants argued that because the breach of each contract took place on the date of the invoice, ACDI's complaint was time-barred by the four-year statute of limitations set forth at RCW 62A.2-725.

In response, ADCI contended that the food was delivered "on credit" and thus the transactions were "accounts receivable" and therefore subject to the six-year statute of limitations under RCW 4.16.040(2). According to ADCI, "the promise giving rise to [ADCI's] accounts receivable was separate from the sale of goods" because "with each delivery Defendants made an unconditional promise to repay their credit balance with interest." ADCI explained that its billing practice was to provide an invoice with each delivery of food, and to provide a monthly account statement "detailing the total amounts past due."[1]

ADCI attached to its response two samples of invoices sent to Café Pho. Each invoice is one page and provides the invoice number, product and quantity ordered, and the signature of the person accepting delivery. The invoice also provides as follows:

> A 1 1/2% monthly finance charge (annual percentage rate of 18%, compounded monthly, accrued from the date of invoice) will be

---

[1] In the alternative, ADCI argued, each invoice constituted a "negotiable instrument" governed by the six-year statute of limitations in Article 3 of the Uniform Commercial Code (UCC), title 62A RCW. ADCI does not pursue this claim on appeal.

assessed on all past due invoices. The buyer hereby agrees to pay such finance charges on all past due invoices.

In the event that Asia Discount Center, Inc. hires an attorney to collect a past due amount, the buyer hereby agrees to pay all Asia Discount Center, Inc. actual expenses, costs and reasonable attorney fees for said collection. The venue of any legal action shall be in King County, Washington.

The trial court disagreed with ADCI's characterization of the transactions as accounts receivable because ADCI did not allege the existence of an agreement for financing that was separate and distinct from the sales contract.[2]  Instead, the trial court stated, "The facts alleged by [ADCI] concern transactions in goods—produce and food—as defined by RCW 62A.2-102 and RCW 62A.105 and sales as defined in RCW 62A.2-106(1)."  The trial court reasoned as follows:

Under Article 2 of the Uniform Commercial Code, as adopted in Washington, payment, unless otherwise agreed, is due at the time and place at which the buyer received the goods, i.e., upon delivery. RCW 62A.2-310. [ADCI] alleges no facts sufficient to demonstrate a separate agreement on time and place for payment of the invoices at issue in this dispute. The last delivery was May 29, 2015. By this time, [ADCI] had failed to pay for all the goods at issue. The 4-year statute of limitations set forth in RCW 62A.2-725 governs. See Lybecker v. United Pac[.] Ins. Co., 67 Wn.2d 11, 15 n. 3[, 406 P.2d 945] (1965). [ADCI's] claims are time-barred because this lawsuit was not initiated until June 24, 2019 (when a defendant was served)

---

[2] The trial court considered both the exhibits attached to the complaint and to ADCI's response to the motion to dismiss, finding that they were incorporated by reference into the complaint, and thus did not constitute "matters outside the pleadings" requiring the trial court to treat the defendants' motion as one for summary judgment under CR 56. See, e.g., U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (a court may consider documents not attached to a complaint, but which are incorporated by reference into the complaint because "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). Nonetheless, the trial court concluded that "[e]ven if the invoices are matters outside the pleadings, the result is the same under a summary judgment standard pursuant to CR 56" because "[b]oth parties had the opportunity to submit the material they wanted considered and both parties agreed to consideration of the invoices." Because neither party addresses the summary judgment standard on appeal, we consider only whether the trial court erred in dismissing the complaint pursuant to CR 12(b)(6).

or June 26, 2019 (when the lawsuit was filed). This was beyond four years after the cause of action accrued.

. . . .

[ADCI's] factual allegations, including the undisputed invoices, do not support application of the statute of limitations applicable to accounts receivable. The facts do not support recovery under an accounts receivable theory where there is no allegation of a separate, distinct agreement between the buyer and the seller apart from the sales agreements, i.e., apart from the invoices for the goods. [ADCI] relies exclusively on the invoices and the content of the invoices, and fails to raise facts consistent with the invoices that a separate, distinct agreement for financing existed. The invoices do not contain a separate, distinct agreement for financing. Because [ADCI] cannot show a separate, distinct agreement consistent with its allegations, including the invoices, this case is distinguishable from Alpacas of America, LLC v. Groome, 179 Wn. App. 391[, 317 P.3d 1103] (2014). In Alpacas, there was both a sales agreement and a promissory note. The suit on the promissory note could go forward under the longer statute of limitations applicable to negotiable instruments, even though suit on the sales contract was time-barred. 179 Wn. App. at 399-400. Here there is only the invoices, which are part of the sales transaction. There is no separate agreement for financing and no promissory note or negotiable instrument.

The trial court concluded, "A plaintiff may be able to establish an accounts receivable theory arising from the sale of the goods, but the facts alleged and the invoices here fail to state a claim for relief." Accordingly, the trial court dismissed ADCI's complaint with prejudice. The trial court awarded the defendants $21,687.50 in attorney fees. ADCI appeals.

ANALYSIS

We review a CR 12(b)(6) dismissal de novo. Trujillo v. Nw Tr. Servs., Inc., 183 Wn.2d 820, 830, 355 P.3d 1100 (2015). Dismissal is appropriate only if the trial court concludes that the plaintiff can prove no set of facts consistent with the complaint to justify recovery. Atchison v. Great W. Malting Co., 161 Wn.2d 372,

376, 166 P.3d 662 (2007). A plaintiff's factual allegations are presumed true for purposes of a CR 12(b)(6) motion. Lawson v. State, 107 Wn.2d 444, 448, 730 P.2d 1308 (1986). "A complaint survives a CR 12(b)(6) motion if any state of facts could exist under which the court could sustain the claim for relief. . . . Thus, a court may consider hypothetical facts not part of the formal record in deciding whether to dismiss a complaint pursuant to CR 12(b)(6)." Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 120, 744 P.2d 1032 (1987). "Such motions should be granted 'sparingly and with care,' and only in the unusual case in which the plaintiff's allegations show on the face of the complaint an insuperable bar to relief." San Juan County v. No New Gas Tax, 160 Wn.2d 141, 164, 157 P.3d 831 (2007).

Article 2 of the UCC, codified in Washington in 1965 at chapter 62A RCW, governs "transactions in goods." See RCW 62A.2-102 ("Unless the context otherwise requires, this Article applies to transactions in goods."). RCW 62A.2-725(1) establishes that a cause of "[a]ction for breach of any contract for sale must be commenced within four years after the cause of action has accrued."[3] A cause of action accrues "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." RCW §62A.2-725(2).

RCW 4.16.040(2), in contrast, provides that "an action upon an account receivable" must be brought within six years. The statute defines an account receivable as "any obligation for payment incurred in the ordinary course of the

---

[3] The statute defines "contract for sale" as "both a present sale of goods and a contract to sell goods at a future time." RCW 62A.2-106

claimant's business or profession, whether arising from one or more transactions and whether or not earned by performance." RCW 4.16.040(2).

"A statute of limitation, in effect, deprives a plaintiff of the opportunity to invoke the power of the courts in support of an otherwise valid claim." Stenberg v. Pac. Power & Light Co., 104 Wn.2d 710, 714, 709 P.2d 793 (1985). Accordingly, when there is uncertainty as to which statute of limitation governs, a court shall apply the longer statute. Id. at 715.

ADCI argues that the trial court erred in applying the four-year statute of limitations for contracts for sale, instead of the six-year statute of limitations governing accounts receivable. It claims that, in doing so, the trial court ignored the Washington Supreme Court's controlling opinion in Tingey v. Haisch, 159 Wn.2d 652, 664, 152 P.3d 1020 (2007).

The defendants contend, as they did before the trial court, that the invoices represent individual contracts for the sale of goods. They argue that sales contracts are governed exclusively by Article 2 of the UCC, citing the comment to UCC section 2-725, which states "This Article takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four year period as the most appropriate to modern business practice."

Tingey addressed the issue of whether RCW 4.16.040(2) applies to an action to collect a balance owed by a client to an attorney for legal services performed on an hourly fee basis without a written fee agreement. 159 Wn.2d at 656. In Tingey, the attorney regularly invoiced the client for legal services on an hourly fee basis. At some point the client stopped paying the invoices, though the

attorney continued to represent the client for another six months. More than three years later, the attorney filed a collection action. The client moved to dismiss the action as time-barred by RCW 4.16.080(3), which provides for a three-year statute of limitations for oral contracts. The attorney moved for summary judgment, arguing that the six-year statute of limitations in RCW 4.16.040(2) applied because he was suing on an account receivable incurred in the ordinary course of business. The trial court granted summary judgment in favor of the attorney, who ultimately prevailed at trial.

Division Three of this court concluded that the attorney's unpaid legal fees were not an account receivable, because the term "account receivable" in RCW 4.16.040(2) refers to an "open account" that is "'[a]n account that is left open for ongoing debit and credit entries by two parties and that has a fluctuating balance until either party finds it convenient to settle and close.'" Tingey v. Haisch, 129 Wn. App. 109, 117, 117 P.3d 1189 (2005), reversed by, 159 Wn.2d 652 (quoting, BLACK'S LAW DICTIONARY 20 (8th ed. 2004)).

> In this case, Mr. Tingey's claim for attorney fees is not an account receivable subject to the six-year statute of limitations stated in RCW 4.16.040(2). When Mr. Haisch retained Mr. Tingey, the transaction was not like a revolving charge account, to which charges were added and payments subtracted. Also, Mr. Haisch did not retain Mr. Tingey for multiple transactions. Rather, he retained an attorney for the sole purpose of representing him in one transaction, the Grant County lawsuit. The transaction did not involve a fluctuating balance of debit and credit entries between two parties involving multiple transactions. Rather, the attorney fees involved an increasing balance of debit entries on one transaction.

Id.

The Washington Supreme Court reversed. It held that, because the term "account receivable" is never defined in the Revised Code of Washington, it must be given its plain meaning as used in the accounting industry, which is "an amount due a business on account from a customer who has bought merchandise or received services." Tingey, 159 Wn.2d at 659. The court identified four elements that would render a transaction an account receivable for the purposes of the six-year statute of limitations:

> Our definition identifies the parties to the contract (a customer and a business) and the character of the transaction (a purchase by the customer). It requires the business to have completed performance (customer has bought or received the merchandise or services). It specifies the monetary nature of the remaining obligation (an amount due). Only oral contracts exhibiting all of these characteristics garner the account receivable six-year limitation.

Id. at 659-60. The court concluded that "[t]he term account receivable encompasses the balance which Tingey seeks to collect, an amount owed to him for legal services performed in the ordinary course of his business." Tingey, 159 Wn.2d at 663 (internal quotations omitted). Five months after the opinion for Tingey was issued, the legislature amended RCW 4.16.040(2) to clarify the definition of account receivable as "any obligation for payment incurred in the ordinary course of the claimant's business or profession, whether arising from one or more transactions and whether or not earned by performance." Laws 2007, ch. 124, § 1.

The defendants contend that Tingey cannot control because it involved the provision of services, not the sale of goods. They assert that any reference to goods or merchandise is merely dicta. But dicta is "language not necessary to the

9

decision in a particular case." In re Marriage of Roth, 72 Wn. App. 566, 570, 865 P.2d 43 (1994). The sole issue in Tingey was what definition to give to "account receivable" for the purposes of the six-year statute of limitations in RCW 4.16.040(2). The court determined that "[w]hen a technical term is used in its technical field, the term should be given its technical meaning by using a 'technical rather than a general purpose dictionary.'" Tingey, 159 Wn. 2d at 658 (quoting City of Spokane ex rel. Wastewater Mgmt. Dep't v. Dep't of Revenue, 145 Wn.2d 445, 454, 38 P.3d 1010 (2002)). The opinion repeats the technical definition, containing the word "merchandise," no less than eight times. Under the circumstances, the court's references to "merchandise" cannot be dismissed as dicta.

The defendants additionally contend that, when the legislature enacted RCW 4.16.040(2) in 1989 to create a six-year statute of limitations for accounts receivable, it did so by amending RCW 4.16.080(3), creating an exception to the three-year statute of limitations for oral contracts. Because the legislature did not similarly amend Article 2 to exempt accounts receivable, the defendants argue, "Washington, like the rest of the country, continued to have a consistent four-year statute of limitations for causes of action arising from transactions in the sale of goods." But we do not believe, as the defendants appear to argue, that the six-year statute of limitations for accounts receivable can never apply when the account receivable arises from the sale of goods.

Finally, citing Gray v. Suttell & Assocs., 123 F. Supp. 3d 1283 (2015), the defendants argue that, to constitute an account receivable, the buyer and seller

10

must have an agreement for financing that is separate and distinct from the sales contract. But Gray, which involved an action to collect the unpaid balance on a store-issued credit card, appears to support ADCI's position. In ruling on a motion for summary judgment that the six-year statute of limitations for accounts receivable applied, the Gray court relied on Tingey's definition of an account receivable as "'an amount due a business on account from a customer who has bought merchandise or received services.'" Gray, 123 F. Supp. 3d at 1298 (quoting Tingley, 159 Wn.2d at 659). It held that "[a]n oral contract between a customer and a business for the purchase of merchandise or services and for which performance has been completed meets this definition." Id. Additionally, it concluded that it was "possible that the relationship at issue here could be viewed as an account receivable," but that the court did not have sufficient undisputed evidence before it to decide the issue on summary judgment grounds. Id.

ADCI alleges that its long-term customers in the restaurant industry, including Café Pho, occasionally experienced financial difficulties that kept them from paying their invoices on time. Consequently, ADCI states, it had a policy of "extending credit" to these customers, and that customers sometimes took as long as five years "to pay off their account receivable balances." According to ADCI, it sent the defendants monthly statements, and expected that the defendants would make payments towards these statements rather than the individual invoices. The defendants responded by "often sending in a check with their own accounting printout of the list of invoices for the month and the monthly total amount owed, but

these payments were normally very late." Frequently, ADCI stated, the defendants would send a single check to cover multiple months of statements.[4]

We conclude that these facts, if true, would constitute a claim for recovery of an account receivable, as defined in Tingey. There is no dispute that the defendants purchased produce and other food products, and ADCI delivered them. The defendants typically maintained an outstanding balance, portions of which it paid off with varying frequency. After a lengthy period of time passed with no payment, ADCI sued to recover the outstanding balance due.

The apparently contradictory positions of the parties can be resolved fairly easily. A specific statute exists to address the sale of goods and a specific statute exists to capture open accounts. The defendants' assertion is correct that the legislative enactment was intended to capture oral agreements for open accounts in the longer six-year statute of limitations and that this action by the legislature did not eliminate the four-year UCC statute of limitations. ADCI brought suit for amounts due on an open account, not a single transaction or merely a number of discrete transactions. Again, under Stenberg, when there is uncertainty as to which statute of limitation governs, a court shall apply the longer of the options. 104 Wn.2d at 715. Based on the broad definition of account receivable in Tingey

---

[4] ADCI alleges these facts for the first time in declarations from ADCI's owner and manager attached to its opening brief. The declarations appear to have been filed in an unrelated lawsuit against a different restaurant, Pho To Chau, that raises similar allegations as the instant case. The defendants move to strike the declarations and other documents attached to ADCI's opening brief, contending they were not part of the record on appeal and ADCI did not move to supplement the record pursuant to RAP 9.11. However, to survive a CR 12(b)(6) motion to dismiss, ADCI need only present a hypothetical set of facts upon which it could pursue relief. Because we consider the declarations for the limited purpose of envisioning such hypothetical facts, we deny the motion to strike.

and RCW 4.16.040(2), ADCI would be entitled to the six-year statute of limitations in RCW 4.16.040(2), and thus the trial court erred in dismissing the complaint under CR 12(b)(6). We vacate the trial court's order of dismissal, including its award of attorney fees, and remand for further proceedings.[5]

ADCI seeks attorney fees and costs incurred on appeal, pursuant to RAP 18.1 and the attorney fee provision in each invoice. The defendants also seek attorney fees, citing RCW 4.84.330, which awards attorney fees to the prevailing party in a contract action. Because the defendants are not the prevailing party on appeal, they are not entitled to fees. Also, an award of fees to ADCI is premature because it has not yet prevailed at this stage of the litigation. See Parmelee v. O'Neel, 168 Wn.2d 515, 522, 229 P.3d 723 (2010) (a plaintiff "prevails" when "actual relief on the merits of [their] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."). If ADCI ultimately prevails on its claims on remand and the trial court concludes fees are appropriate, the trial court may include in its award attorney fees and costs for this appeal.

Reversed and remanded.

WE CONCUR:

_Andrus, A.C.J._

_____

_Appelwick, J._

---

[5] Given our disposition of this case, we do not address ADCI's arguments regarding due process or whether subsequent events served to restart the limitations period.